FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 24 2010

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

KOOL SMILES, P.C. §
    PLAINTIFF §
        §
VS. §
        §
DR. ERIC SHARKS §
    DEFENDANT §

CIVIL ACTION NO. 4·10·CV·1166 SWW

This case assigned to District Judge _Wright_
and to Magistrate Judge _Young_

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Kool Smiles, P.C. ("Kool Smiles") complains against Defendant Dr. Eric Sharks ("Defendant") and states:

### PARTIES

1.    Kool Smiles is a Georgia professional corporation with its principal place of business in Atlanta, Georgia.

2.    On information and belief, Defendant is an individual domiciled in Shelby County, Memphis, Tennessee 38115, previously having resided in numerous counties throughout Arkansas, including Pulaski County, AR. Defendant can be located for service of process at 5430 Winchester Road, Memphis, TN.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties to this lawsuit are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), in that i) jurisdiction is founded on diversity of citizenship, and ii) contracts were entered into and a

substantial part of the events or omissions giving rise to the claims occurred in Pulaski County, Arkansas.

## FACTS

5.      This dispute arises over Defendant's brief employment at Kool Smiles' Little Rock, Arkansas office.  In July 2009, Kool Smiles and Defendant began discussions regarding Defendant's future employment with Kool Smiles.

6.      On July 30, 2009, Kool Smiles and Defendant entered into a Confidentiality and Restrictive Covenant Agreement, which provided, in part, that Defendant was not to engage in any activity competitive with or adverse to Kool Smiles' business or affairs.  *See* Exhibit A, attached hereto.

7.      On August 4, 2009, Defendant accepted, agreed, and executed a Notice Agreement whereby he was required to give written notice of termination to the regional dentist responsible at the Little Rock, Arkansas Kool Smiles' location at least ninety (90) days prior to the effective date of his resignation. *See* Exhibit B, attached hereto.

8.      On August 10, 2009, Kool Smiles tendered to Defendant a Twenty Five Thousand and no/100 Dollar ($25,000.00) or sign-on bonus, less withholdings for Social Security and Medicare taxes.  *See* Exhibit C, attached hereto.  At a later date, Kool Smiles paid Eleven Thousand Four Hundred Eleven and 43/100 Dollars ($11,411.43) for Defendant's relocation expenses. *See* Exhibit D, attached hereto.

9.      On September 1, 2009, Kool Smiles and Defendant executed a Bonus and Repayment Agreement, which incorporated a Promissory Note, attached to the Bonus and Repayment Agreement as Exhibit A, executed by Defendant on the same date. *See* Exhibit E, attached hereto.   Pursuant to the terms of the Bonus and Repayment Agreement and

accompanying Promissory Note (together, the "Repayment Agreement"), Defendant's retention

of his sign-on bonus in the amount of Twenty Five Thousand and no/100 Dollars ($25,000.00)

and relocation expenses in the amount of Eleven Thousand Four Hundred Eleven and 43/100

Dollars ($11,411.43) was contingent upon Defendant remaining actively employed at Kool

Smiles for the two-year period following the date of the Repayment Agreement.

10.     The Confidentiality and Restrictive Covenant Agreement, Notice Agreement, and

Repayment Agreement were each valid and enforceable contracts.

11.     On September 1, 2009, Defendant began working as a dentist at the Kool Smiles'

Little Rock, Arkansas location.

12.     Defendant electronically acknowledged receipt of Kool Smiles' Employee

Handbook which sets forth, among other things, Kool Smiles' Attendance and Punctuality

Policy. Kool Smiles' Attendance and Punctuality Policy states, in part, "If you are absent for

three (3) consecutive days without contacting your manager, you will be considered as having

voluntarily resigned."

13.     During the course of his employment at Kool Smiles, Defendant was paid in full

for the services he provided as the only permanent dentist stationed at the Little Rock office.

14.     On November 24, 2009, Defendant was absent from work at Kool Smiles' Little

Rock office. On November 25, 2009, Defendant's doctor faxed a note to the Kool Smiles' Little

Rock office stating that Defendant "has been" under her care from November 25, 2009 to

December 27, 2009 and that Defendant would not be able to return to work until December 28,

2009.

15.     As it turned out, Defendant was able to work during the time he and his doctor

represented that he would be unable to do so. On information and belief, not only did Defendant

knowingly misrepresent his inability to work, he worked for Kool Smiles' primary regional competitor, Ocean Dental, during the time period he represented to Kool Smiles that he would be unable to work.

16.     On December 14, 2009, Defendant returned to work at Kool Smiles only to abruptly leave during the middle of the work day.  As a result of Defendant's abrupt departure, patients were left untreated and Kool Smiles' Little Rock office was left in a state of disarray.

17.     Thereafter, pursuant to Kool Smiles' policy as stated in its Employee Handbook, Defendant's employment was terminated after three days of no call, no show.

### CAUSES OF ACTION

### Count I - Defendant's Breach of the Bonus and Repayment Agreement and Accompanying Promissory Note

18.     Kool Smiles alleges and incorporates by reference Paragraphs 1 through 17 above.

19.     Defendant's failure to remain employed at Kool Smiles for the two-year period immediately following the date of the Repayment Agreement, September 1, 2009, constituted an event of default under both the Bonus and Repayment Agreement and the Promissory Note, and Defendant is liable, under such agreements, for repayment of the amounts tendered to him.  *See* Exhibit E.  Upon Defendant's default, the Bonus and Repayment Agreement and the Promissory Note provide that Kool Smiles has the right to declare all amounts evidenced by the Promissory Note to be due and payable immediately.  *Id.*

20.     The Promissory Note executed by Defendant obligates Defendant to repay Kool Smiles Twenty Five Thousand and no/100 Dollars ($25,000.00) plus Eleven Thousand, Four Hundred Eleven and 43/100 Dollars ($11,411.43), for a total of Thirty-Six Thousand, Four Hundred Eleven and 43/100 Dollars ($36,411.43), plus default interest, attorney's fees, court

costs, and other amounts due. *Id.* Defendant is obligated to pay default interest on the Thirty-Six Thousand, Four Hundred Eleven and 43/100 Dollars ($36,411.43) from the date of the event of default at a rate equal to the Prime Rate as quoted by the Wall Street Journal Eastern Edition on the day prior to the date of the event of default, and calculated on the basis of a 360-day year for the actual number of days elapsed since the event of default. *Id.*

21.     Defendant has not made any repayment to Kool Smiles for his breach of and default under the Repayment Agreement and is liable for the amounts tendered by Kool Smiles plus interest, reasonable attorney's fees, court costs, and other amounts due.  As a result of Defendant's breach of the Repayment Agreement, Kool Smiles has been damaged and will continue to be damaged.

22.     Kool Smiles has fully performed its obligations under the Bonus and Repayment Agreement and Promissory Note and all conditions precedent, if any, to Kool Smiles' right to recover against Defendant have occurred.

**Count II - Defendant's Breach of the Confidentiality and Restrictive Covenant Agreement**

23.     Kool Smiles alleges and incorporates by reference Paragraphs 1 through 22 above.

24.     Defendant breached the Confidentiality and Restrictive Covenant Agreement he entered into with Kool Smiles by working for Kool Smiles' primary regional competitor, Ocean Dental, while still employed at Kool Smiles. *See* Exhibit A.

25.     Paragraph 2 of the Confidentiality and Restrictive Covenant Agreement provides that "[d]uring the term of [Defendant's] employment with [Kool Smiles], [Defendant] shall not at any time or place or to any extent whatsoever, either directly or indirectly, without the express

written consent of [Kool Smiles], engage in any activity competitive with or adverse to [Kool Smiles'] business or affairs . . ." *Id.*

26.     By working for Ocean Dental, Defendant directly engaged in activity competitive with and/or adverse to Kool Smiles' business and/or affairs.  Further, Defendant did not have Kool Smiles' express written consent to do so.  Kool Smiles has been damaged by Defendant's competitive actions and breach of the Confidentiality and Restrictive Covenant Agreement.

27.     Kool Smiles has fully performed its obligations under the Confidentiality and Restrictive Covenant Agreement and all conditions precedent, if any, to Kool Smiles' right to recover against Defendant have occurred.

### Count III - Defendant's Breach of the Notice Agreement

28.     Kool Smiles alleges and incorporates by reference Paragraphs 1 through 27 above.

29.     Defendant breached the Notice Agreement he executed by failing  to give written notice of termination to the regional dentist responsible at the Little Rock, Arkansas Kool Smiles location at least ninety (90) days prior to the effective date of his resignation.  *See* Exhibit B.  In fact, Defendant never gave any written notice of his intent to terminate his employment with Kool Smiles.

30.     Defendant agreed that if he violated the Notice Agreement he would pay Kool Smiles Five Hundred and no/100 Dollars ($500.00) for each day, up to ninety days, that he failed to give notice.  *Id.*  As noted, Defendant did not provide Kool Smiles with any notice of termination; accordingly, Kool Smiles has been damaged, and Defendant is liable to Kool Smiles for liquidated damages in the amount of Forty-Five Thousand and no/100 Dollars ($45,000.00).

31.     Kool Smiles has fully performed its obligations under the Notice Agreement and all conditions precedent, if any, to Kool Smiles' right to recover against Defendant have occurred.

## Count IV - Unjust Enrichment

32.     Kool Smiles alleges and incorporates by reference Paragraphs 1 through 31 above.

33.     Alternatively, Kool Smiles alleges that Defendant has been unjustly enriched by his wrongful retention of benefits conferred on him by Kool Smiles and failure to fulfill promises made to Kool Smiles.  Defendant is in possession of Thirty-Six Thousand, Four Hundred Eleven and 43/100 Dollars ($36,411.43) plus interest which rightfully belongs to Kool Smiles.  Further, Defendant's failure to fulfill his promises to Kool Smiles that he would give notice of his intent to terminate his employment and not compete with Kool Smiles during the course of his employment have caused Kool Smiles damages for which Defendant should be liable.

34.     In equity and good conscience, the benefits retained by Defendant belong to Kool Smiles.  By his wrongful conduct against Kool Smiles, Defendant has enriched himself at the expense and express detriment and disadvantage of Kool Smiles, in an amount exceeding Eighty-One Thousand and no/100 Dollars ($81,000.00).

35.     Because of this unjust enrichment, Defendant should be disgorged of the amounts wrongfully retained and required to make restitution to Kool Smiles of the benefits received, such restitution being just and equitable.

## Count V - Fraud

36.     Kool Smiles alleges and incorporates by reference Paragraphs 1 through 35 above.

37.    Defendant falsely represented to Kool Smiles in late November 2009, that his medical condition precluded him from working for the successive weeks.    Defendant's knowledge of the falsity of this representation is evidenced by the fact that he did work during his medical leave period for Kool Smiles' primary regional competitor, Ocean Dental.

38.    Defendant's representation that his medical condition was such that he would be unable to work at Kool Smiles was intended to induce Kool Smiles into relying upon his representation so that Defendant's true motive would not be uncovered - working for Kool Smiles' competitor while still employed at Kool Smiles.    Further, Defendant intended for Kool Smiles to believe his fraudulent claims so that his absence would be excused and so that no action would be taken by Kool Smiles for such absence.

39.    Kool Smiles' reliance on Defendant's misrepresentation was justified, as it had no reason to believe that Defendant's representations about his medical condition or plans to return to Kool Smiles were inaccurate.

40.    Kool Smiles has been damaged by Defendant's fraudulent misrepresentations because it was not afforded the opportunity to secure a replacement for Defendant as it relied upon Defendant's representation that he would return to and remain at work upon his return from his contrived medical leave.    Kool Smiles has suffered further damage to its business, and Defendant should be held accountable for the damages caused to Kool Smiles by his fraudulent misrepresentations.

41.    Defendant knew or should have known, in light of the surrounding circumstances that his conduct would naturally and probably result in injury.    Even so, Defendant continued such conduct in reckless and malicious disregard of the consequences, thus entitling Kool Smiles to exemplary damages against Defendant.

### Count VI - Conversion

42.   Kool Smiles alleges and incorporates by reference Paragraphs 1 through 41 above.

43.   Defendant is in wrongful possession of Kool Smiles' property, namely the sign-on bonus and relocation expenses tendered to him by Kool Smiles in the amount of Thirty-Six Thousand, Four Hundred Eleven and 43/100 Dollars ($36,411.43).  Defendant's retention of this sum was contingent on him completing two years of employment with Kool Smiles.

44.   Defendant agreed to repay the sums tendered to him in the event he did not complete two years of employment with Kool Smiles.  Defendant did not meet his two year employment obligation and has not repaid Kool Smiles any of the money it tendered. Accordingly, Defendant has committed a distinct act of dominion over the property of Kool Smiles, such dominion being inconsistent with Kool Smiles' rights.

### Jury Demand

45.   Plaintiff hereby demands a trial by Jury.

### RELIEF REQUESTED

46.   For all the foregoing reasons, Kool Smiles respectfully requests that this Court enter judgment against Defendant for:

(a)   all actual and compensatory damages, in excess of Eighty-One Thousand Dollars ($81,000.00), including but not limited to, damages as provided for in the Bonus and Repayment Agreement and accompanying Promissory Note, Confidentiality and Restrictive Covenant Agreement, and Notice Agreement, and for loss of revenue and business relationships;

(b)   exemplary damages;

(c)   pre-judgment interest;

(d)    post-judgment interest;

(e)    costs;

(f)    attorneys' fees; and

(g)    any and all other remedies and any and all other relief, in law or equity, to

which Kool Smiles shows itself justly entitled.

Respectfully submitted,

Jennifer H. Doan
Arkansas Bar No. 96063
Kristie A. Wright
Arkansas Bar No. 2005012
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX  75503
Telephone:  (903) 255-1000
Facsimile:  (903) 255-0800
Email:  jdoan@haltomdoan.com
        kwright@haltomdoan.com

**ATTORNEYS FOR PLAINTIFF KOOL
SMILES, P.C.**

# EXHIBIT A

## CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT

THIS CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT (this "Agreement") is made this 30th day of July, 2009, by and between Kool Smiles, P.C., an Arkansas professional corporation ("Company") and Dr. Eric Sharks ("Employee").

### R E C I T A L S

Company wishes to retain the services of Employee and Employee wishes to be employed by Company. Employee has or will have detailed knowledge of various aspects of Company's business and is or will be in possession of proprietary and confidential information concerning the business. The disclosure of such information or the engaging in competitive activities would cause substantial harm to Company.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>Interests to be Protected</u>. Employee acknowledges that he or she will be given an opportunity to meet, work with and develop close working relationships with Company's customers and others. In addition, Employee will have access to, and be required to work with, a considerable amount of confidential and proprietary information of the Company and entities managed by the Company. The parties also expressly recognize and acknowledge that the personnel of Company (including personnel employed by any entity managed by the Company) have been trained by, and are valuable to Company, and that if Company (or such other entity) must hire new personnel or retrain existing personnel to fill vacancies, Company will incur substantial expense in recruiting and training such personnel. The parties expressly recognize that should Employee compete with Company in violation of this Agreement, it would seriously impair the goodwill and diminish the value of Company's business. The parties acknowledge that the restrictive covenants in this Agreement are reasonable and that they are necessary for the protection of Company, its shareholders and employees.

For these and other reasons, and the fact that there are many other employment opportunities available to Employee if Employee's employment should terminate, the parties are

in full and complete agreement that the following restrictive covenants are fair and reasonable and are freely, voluntarily and knowingly entered into. Further, each party has been given the opportunity to consult with independent legal counsel before entering into this Agreement.

2.   **Devotion to Employment**.   Employee shall devote substantially all of Employee's business time and best efforts to the performance of Employee's duties on behalf of Company. During the term of Employee's employment with Company, Employee shall not at any time or place or to any extent whatsoever, either directly or indirectly, without the express written consent of Company, engage in any activity competitive with or adverse to Company's business or affairs, whether alone or as partner, officer, director, employee, shareholder of any corporation or as a trustee, fiduciary, or consultant. This is not intended to prohibit Employee from engaging in activities such as personal investments, private business affairs, or speaking engagements, as long as they do not conflict with the interests of Company or otherwise violate this Agreement. Employee's employment with Company is at-will and nothing in this Agreement shall create a right to any particular period of employment or otherwise alter the at-will nature of the employment.

3.   **Non-Solicitation of Employees**.   During the term of Employee's employment with Company and for a period of 12 months after the termination of employment with Company, regardless of who initiates the termination, Employee shall not, directly or indirectly, either alone or on behalf of, or in conjunction with, any other person(s), company, partnership, corporation, or governmental entity, in any manner whatsoever, recruit or otherwise seek to hire, any person who, on the date hereof, or on the date of Employee's termination, is an employee of Company, any company managed by the Company, or any of their subsidiaries or affiliates for employment or as an independent contractor with any person or entity, unless first authorized in writing by Company, which authorization may be withheld in the sole and absolute discretion of Company. If Employee violates Employee's obligations under this _Section 3_, and company files litigation alleging such a violation, then the time periods hereunder shall be extended by the period of time equal to that period beginning when the litigation alleging such violation commences and ending when the litigation alleging such violation terminates.

4.   **Competing Business**.   During the term of Employee's employment and for a period of 12 months after the termination of employment with Company, regardless of who

2

initiates the termination, Employee shall not, directly or indirectly, including, without limitation, as a partner, director, officer or employee of, or lender or consultant to, any other person or entity, for himself or herself, or on behalf of, or in conjunction with, any other person(s), company, partnership, corporation, or governmental entity, in any manner whatsoever, or in any other capacity, within, into or from the Restricted Territory (as defined below) engage or cause others to engage in the same or similar business as Company, any entity managed by the Company or their subsidiaries, which consists of the practice of pediatric dentistry for, or provision of pediatric dentistry services to, pediatric patients whose dental services are paid through Medicaid or other forms of public assistance, or any aspect thereof, unless first authorized in writing by Company, which authorization may be withheld in the sole and absolute discretion of Company. For purposes of this Section 4, the term "Restricted Territory" shall mean any geographical area within a 5-mile radius of any clinic or office operated by Company in which Dentist was chiefly employed. If Employee violates Employee's obligations under this Section 3, and company files litigation alleging such a violation, then the time periods hereunder shall be extended by the period of time equal to that period beginning when the litigation alleging such violation commences and ending when the litigation alleging such violation terminates.

5.    **No Use or Disclosure of Confidential Information.** Employee recognizes and acknowledges that all records, patient information, files, reports, protocols, policies, manuals, databases, business plans, processes, procedures, computer systems, methods of operation, financial information, strategic planning, operational budgets and strategies, payroll data, management system, programs, marketing plans and strategies, and merger and acquisition strategies, materials and other documents pertaining to services rendered by Employee hereunder or to the operations of Company, belong to, and shall remain the property; of Company and constitute proprietary information and trade secrets of Company. Employee recognizes and acknowledges that the terms of this Agreement, as well as Company's proprietary information and trade secrets as they may exist from time to time, are valuable, special, and unique assets of Company's business. Employee agrees that, to the extent that such information, or any other information, constitutes a "Trade Secret" pursuant to state law, Employee shall not, during or after the Agreement Term for so long as the information remains a Trade Secret, disclose such Trade Secrets of Company to any other firm, person, corporation, association or other entity for

3

any reason or, purpose whatsoever, or use such information for Employee's own benefit or the benefit of anyone except Company, without the prior written consent of Company, unless otherwise required to disclose such information in accordance' with applicable and enforceable judicial process. In addition, Employee acknowledges that, to the extent that such information does not rise to the level of a Trade Secret pursuant to state law but is not generally disclose outside Company and Company makes reasonable efforts to protect its confidentiality, such information constitutes "Confidential Information". Employee agrees that, to the extent that such information, or any other information, constitutes Confidential Information, Employee shall not, during employment with the Company or for a period of three (3) years immediately following termination of employment with the Company for any reason, disclose such Confidential Information to any other firm, person, corporation, association or other entity for any reason or, purpose whatsoever, or use such information for Employee's own benefit or the benefit of anyone except Company, without the prior written consent of Company, unless otherwise required to disclose such information in accordance' with applicable and enforceable judicial process. Nothing in this provision or this Agreement shall limit Company's protections, rights, or remedies with respect to trade secrets, proprietary information or any other confidential information under federal, state, or local law.

6.     **Disparagement**. Employee acknowledges and agrees not to make or publish, orally or in writing, any derogatory or disparaging statements regarding Company or NCDR, LLC or which disparages or criticizes Company or NCDR, LLC management personnel or practices, damages its reputation, or impairs its normal operations; provided, however, that this provision is not intended to prevent Employee from testifying truthfully in response to a valid subpoena or other compulsory legal process. Publishing includes, without limitation, communicating electronically (e.g., in person or via telephone, mail, fax, email, Internet "chat rooms," posting to community bulletin boards, web logs or otherwise).

7.     **Judicial Amendment**. In the event a court of law declares the 12 month period after the expiration or termination of employment with Company in Sections 3 and 4 excessive and/or unenforceable, the parties agree that the restrictive term shall be the term of Employee's employment plus the period of 6 months after the expiration or termination of employment with Company. Notwithstanding anything herein to the contrary, if the scope of any provision of this Agreement is found by a court of competent jurisdiction to be too broad to permit enforcement to

4

its full extent, then such provision shall be enforced to the maximum extent permitted by law. The parties agree that the scope of any provision of this Agreement may be modified by a judge in any proceeding to enforce this Agreement, so that such provision can be enforced to the maximum extent permitted by law. If any provision of this Agreement is found to be invalid or unenforceable for any reason, it shall not affect the validity of the remaining provisions of this Agreement.

8.   **Injunctive Relief, Damages and Forfeiture.**  Due to the nature of Employee's position with Company, and with full realization that a violation of this Agreement will cause immediate and irreparable injury and damage, which is not readily measurable, and to protect Company's interests, Employee understands and agrees that in addition to instituting legal proceedings to recover damages resulting from a breach of this Agreement, Company is entitled to obtain injunctive relief to cease or prevent any actual or threatened violation of this Agreement on the part of Employee.

9.   **Disclosure and Assignment of Developments.**  Employee agrees to disclose to the Company all ideas, concepts, discoveries, know-how, inventions, innovations, improvements, technical contributions, designs, methods, processes, compositions, techniques, systems, machines, devices, data, technical information, mask works, patents, trademarks, trade secrets, copyrights, works of authorship including software and computer programs and any other intellectual property or proprietary information (collectively referred to as "Developments") relating to the Company's business which Employee conceives, makes or creates individually or jointly with others. Employee agrees to assign and hereby does assign to the Company or to the Company's designee a perpetual, non-exclusive, royalty-free license in and to all such Developments made or conceived by Employee during the course of his or her employment. Upon the Company's request, and at the Company's expense, Employee agrees to execute all instruments, including specific assignments required for securing, demonstrating or maintaining the Company's rights in such Developments, as well as any other acts reasonably necessary to assist the Company in obtaining and enforcing rights in such Developments.

10.   **Amendments.**  This Agreement constitutes the entire agreement between the parties as to the subject matter hereof. Accordingly, there are no side agreements or verbal

5

agreements other than those which are stated in this document. Any amendment, modification or change in this Agreement must be done in writing and signed by both parties.

11.  **Severability.**  In the event a court or arbitrator declares that any provision of this Agreement is invalid or unenforceable, it shall not affect or invalidate any of the remaining provisions. Further, the court shall have the authority to re-write that portion of the Agreement it deems unenforceable, to make it enforceable.

12.  **Governing Law.**  The law of the State of Arkansas shall govern the interpretation and application of all of the provisions of this Agreement.

13.  **Waiver.**  Any waiver by either party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other provision hereof and shall not be effective at all unless in writing. A waiver of any of the terms and conditions hereof shall not be construed as a general waiver by either party, and such waiving party shall be free to reinstate any such term or condition, with or without notice to the other party.

14.  **Entire Agreement.**  This Agreement contains the entire agreement between the parties hereto and supersedes all prior agreements, whether oral or in writing, with respect to the subject matter hereof.

IN WITNESS WHEREOF, Company and Employee have executed this Agreement effective on the date set forth above.

KOOL SMILES, P.C.,
an Arkansas professional corporation

By: _____
Name: _____
Title: _____

"EMPLOYEE"

_____
[Name]

1764327.1

6

# EXHIBIT B



**General Dentistry for
Kids and Teens**

### NOTICE AGREEMENT

In consideration of my offer of employment and my employment with Paul Walker DDS, PA ("Kool Smiles"), I Dr. Eric Sharks, agree that, in the event I resign my employment with Kool Smiles or any other Kool Smiles entity, I will give written notice of termination to the Regional Dentist responsible at my Kool Smiles location at least ninety (90) days prior to the effective date of my resignation. I acknowledge and agree that the injury and/or damages caused to Kool Smiles by my breach this notice covenant will be difficult, if not impossible, to accurately estimate, so I also agree that if I violate this agreement by not providing such written notice at least ninety (90) days prior to the effective date of my resignation, I will pay to Kool Smiles Five Hundred Dollars ($500.00) for each day within the ninety (90) days prior to the effective date of my resignation for which I do not provide such written notice. For example, if I provide written notice only sixty (60) days prior to the effective date of my resignation, I will pay to Kool Smiles Fifteen Thousand Dollars ($15,000.00), which is equal to Five Hundred Dollars ($500.00), multiplied by the thirty (30) days out of the required ninety (90) for which I did not provide written notice. I acknowledge and agree that this Five Hundred Dollar ($500.00) per day requirement is not a penalty, but rather is a reasonable and accurate estimate of a small portion of the losses and damages that Kool Smiles is likely to incur through the loss of my services and is a reasonable way for Kool Smiles to recoup a portion of those losses. I acknowledge and agree that both the revenue and profit that I am expected to generate on a daily basis for Kool Smiles exceeds Five Hundred Dollars ($500.00) per day and that this amount is a fair and reasonable compromise protecting the legitimate interests of Kool Smiles and providing reasonable mitigation of losses and damages lack of notice would cause to Kool Smiles. I also acknowledge and agree that ninety (90) days is a fair and reasonable notice period, particularly for a professional dentist position, and I am agreeing to it voluntarily. I authorize Kool Smiles to deduct from any paycheck or other payment owed to me any liquidated damages that I owe to Kool Smiles under this Agreement.

I agree that the terms and conditions set forth in this letter are strictly confidential, and I agree to keep them confidential. I also agree that all terms of this Agreement are severable from one another.

Furthermore, I confirm that this letter and its attachments represent the understanding between Kool Smiles and me, and that it is assignable to other Kool Smiles entities with which I become employed and to any successor of Kool Smiles. I voluntarily accept and agree to the terms as outlined.

ACCEPTED AND AGREED TO

Name: _____

Date: _____

400 Galleria Pkwy, Ste 800          Atlanta, GA 30339          Fax 678.669.2320
                                     www.koolsmilespa.com

# EXHIBIT C



KOOL SMILES, PC
400 GALLERIA PKWY SE
SUITE 800
ATLANTA, GA 30339

## Earnings Statement

Period Beginning Date: 07/20/2009
Period Ending:        08/02/2009
Pay Date:             08/10/2009

Social Security Number: XXX-XX-8953
Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 0
State:   0
Local:

ERIC SHARKS
639 AMETHYST AVE
BETHEL HEIGHTS, AR 72764

| Hours and Earnings | | | | Taxes and Deductions | |
| --- | --- | --- | --- | --- | --- |
| Description | Hours | This Period | | Description | This Period |
| Bonus | | 25,000.00 | | Social Security Tax | 1,550.00 |
| | | | | Medicare Tax | 362.50 |

| Gross Pay This Period | Total Deductions This Period | Net Pay This Period |
| --- | --- | --- |
| $25,000.00 | $1,912.50 | $23,087.50 |

▼ TEAR HERE   Call FormCenter to Reorder (800) 662-3218 or log on to www.form-center.com/adp

---

KOOL SMILES, PC
400 GALLERIA PKWY SE
SUITE 800
ATLANTA, GA 30339

005021

Pay Date: 08/10/2009

TWENTY-THREE THOUSAND EIGHTY-SEVEN DOLLARS AND FIFTY CENTS

Pay To The Order Of   ERIC SHARKS

Pay This Amount   $23,087.50

BANK OF AMERICA
BAY AREA COML BANKING-SAN FRANCISCO
SAN FRANCISCO CA 94104

AUTHORIZED SIGNATURE

⑆005021⑆ ⑆121000358⑆ 14994⑆24341⑆

# EXHIBIT D

# Dr Sharks Expense Detail Rpt as of 10 30 09

**Employee :**   Sharks, Erlo

| Exp. Code | Description | Paid To | Amount |
|---|---|---|---|
| 100 | Shipment of Household Goods | A-1 Freeman (N.Am.) | 9,911.43 |
| 305 | HF Rental Tour | Other | 400.00 |
| P102 | SF Destination Svc. | Other | 450.00 |
| P103 | SF Expense Mgmt. | Other | 350.00 |
| P101 | SF Program Mgmt. | Other | 300.00 |

**Number of Expenses:**     5          **Total of Expenses:**    11,411.43

# EXHIBIT E

## BONUS AND REPAYMENT AGREEMENT

This BONUS AND REPAYMENT AGREEMENT (the "Agreement") dated as of the 1st of September, 2009 between Dr. Eric Sharks ("Employee") and Kool Smiles, PC.

Employee hereby acknowledges receipt of a $25,000.00 sign on bonus, less applicable deductions and withholdings (the "Bonus") in connection with Employee's commencement of employment with KOOL SMILES, PC. In addition, Employee acknowledges that KOOL SMILES, PC has/will be reimbursing and/or advancing certain expenses to Employee and/or third parties on Employee's behalf pursuant to KOOL SMILES, PC relocation policy ("Relocation Expenses").

The Employee and KOOL SMILES, PC agree that in exchange for receipt of the Bonus and Relocation Expenses by the Employee, for the two-year period immediately following the date of this Agreement (the *"Two-Year Period"*) the Employee shall remain actively employed with KOOL SMILES, PC (the *"Obligation"*).

The Obligation is further evidenced by a Promissory Note dated as of the date hereof, executed by the Employee, in favor of KOOL SMILES, PC in the original principal amount of the Bonus and in substantially in the form of Exhibit A attached hereto (the *"Promissory Note"*). The terms of the Promissory Note are incorporated herein by reference.

If the Employee is continuously employed by KOOL SMILES, PC throughout the Two-Year Period then KOOL SMILES, PC agrees to cancel Promissory Note and return the Promissory Note to Employee within five (5) business days following the expiration of the Two-Year Period. At such time, this Agreement shall terminate and the rights, obligations and responsibilities of each party under this Agreement shall cease.

The Employee and KOOL SMILES, PC agree that should the Employee's employment with KOOL SMILES, PC terminate, for any reason, at any time before the expiration of the Two-Year Period, then such termination shall constitute a default under this Agreement (*"Default"*).

Upon a Default, KOOL SMILES, PC may exercise any and all rights and remedies available to it at law, in equity or otherwise, including, but not limited to, declare all amounts evidenced by the Promissory Note to be due and payable immediately, without presentment, demand, protest or further notice (including without limitation, notice of intent to accelerate and notice of acceleration) of any kind, all of which are expressly waived by the Employee.

Further, the Employee agrees to repay such Relocation Expenses and also accept responsibility for any relocation related tax liabilities, credits and/or deductions as a result of Default. The employee hereby consents to and authorized KOOL SMILES, PC to withhold from the Employee's final paycheck any money owed to Employee by KOOL SMILES, PC to satisfy any and all amount due under this Agreement.

This Agreement shall be governed by the laws of the State of Arkansas.

IN WITNESS WHEREOF, the parties hereto have executed this Bonus and Repayment Agreement, or have caused this Bonus and Repayment Agreement to be executed by their duly authorized officers, as of September 1, 2009.

Employee

_Eric Shanks_

Signature

_Eric Shanks_

Printed or Type Name

Address for Notices:

_639 Amethyst Ave_
_Bethel Heights AR. 72764_

Agreed:

KOOL SMILES, PC.

By: _David H. King_

Name: David H. King

Title: VP Human Resources

Address for Notices:

400 Galleria Pkwy, Ste 800
Atlanta, GA 30339

**EXHIBIT A**
**PROMISSORY NOTE**

$25,000.00                                                    September 1, 2009

**FOR VALUE RECEIVED**, the undersigned, **ERIC SHARKS**, promises to pay to the order of KOOL SMILES, PC (hereafter, together with any holder hereof, called "Holder") at the offices of the Holder located at 400 Galleria Parkway, Suite 800, Atlanta, Georgia 30339, or at such other place as the Holder may designate in writing to the undersigned, in lawful money of the United States of America, and in immediately available funds, the principal sum of TWENTY FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) (the *"Principal Amount"*) and the principal sum of FULL RELOCATION COSTS (the *"Principal Amount"*).

**PAYMENT AND INTEREST:** The principal balance shall be payable on September 6, 2011 (the *"Maturity Date"*). Except in the case of an Event of Default (defined below), no interest shall accrue on the principle balance of this Promissory Note.

**EVENT OF DEFAULT.** Each of the following events shall constitute an *"Event of Default"* under this Promissory Note: (i) the occurrence of a "Default" as such term is defined in the Bonus and Repayment Agreement dated as of the date hereof between the undersigned and the Holder or (ii) undersigned's failure to pay the Principal Amount in full on the Maturity Date.

**DEFAULT INTEREST.** Upon the occurrence of an Event of Default, the undersigned shall pay interest on the unpaid Principal Amount. The interest shall be calculated on the basis of a 360-day year for the actual number of days elapsed since such Event of Default at a per annum rate equal to the Prime Rate as quoted by the Wall Street Journal Eastern Edition (or, in the event that the Wall Street Journal fails to publish such rate, such other publication as the Holder shall designate in the exercise of its sole discretion), on the immediately preceding business day after such Event of Default. In no event shall the amount of interest due or payable under this Promissory Note exceed the maximum rate of interest allowed by applicable law and, in the event any such payment is inadvertently paid by the undersigned or inadvertently received by the Holder, then such excess sum shall be credited as a payment of principal, unless the undersigned shall notify the Holder in writing that the undersigned elects to have such excess sum returned to it forthwith. It is the express intent of the parties hereto that the undersigned not pay and the Holder not receive, directly or indirectly, in any manner whatsoever, interest in excess of that which may be lawfully paid by the undersigned under applicable law.

**ACCELERATION.** Upon the occurrence of an Event of Default, any and all of the obligations hereunder, at the option of the Holder, and without demand or notice of any kind, may be declared immediately due and payable, and thereupon the Holder may exercise any and all rights and remedies available to it at law, in equity or otherwise.

**WAIVER.** The undersigned hereby waives presentment, demand, notice of dishonor, protests and further notice (including without limitation, notice of intent to accelerate and notice of acceleration) of any kind, to the extent permitted by law.

**ATTORNEY'S FEES.** If this Promissory Note is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then the undersigned shall pay Holder all costs of collection and enforcement, including reasonable attorney's fees and court costs, in addition to other amounts due.

**AMENDMENTS.** All amendments to this Promissory Note, and any waiver or consent of the Holder, must be in writing and signed by the Holder and the undersigned.

**SEVERABILITY.** If any provision of this Promissory Note or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Promissory Note nor the application of the provision to other persons, entities, or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**BINDING EFFECT.** The obligations contained in this Promissory Note shall be binding on and inure to the benefit of the heirs, legal representatives, successors and assigns of the parties hereto.

**DESCRIPTIVE HEADINGS.** The descriptive headings used herein are for convenience of reference only and are not intended to have any effect whatsoever in determining the rights or obligations under this Promissory Note.

**CONSTRUCTION.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

**WAIVER OF TRIAL BY JURY.** THE UNDERSIGNED AND THE HOLDER BY ACCEPTING THIS PROMISSORY NOTE, EACH ACKNOWLEDGES THAT ANY DISPUTE OR CONTROVERSY BETWEEN THE UNDERSIGNED AND THE HOLDER WOULD BE BASED ON DIFFICULT AND COMPLEX ISSUES OF LAW AND FACT. ACCORDINGLY, THE HOLDER AND THE UNDERSIGNED HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING OF ANY KIND OR NATURE IN ANY COURT OR TRIBUNAL IN WHICH AN ACTION MAY BE COMMENCED BY OR AGAINST THE UNDERSIGNED ARISING OUT OF THIS PROMISSORY NOTE OR BY REASON OF ANY OTHER CAUSE OR DISPUTE WHATSOEVER BETWEEN THE UNDERSIGNED AND THE HOLDER OF ANY KIND OR NATURE.

**GOVERNING LAW.** THIS PROMISSORY NOTE SHALL BE GOVERNED, CONSTRUED, AND INTERPRETED BY, THROUGH AND UNDER THE LAWS OF THE STATE OF ARKANSAS.

Time is of the essence of this Promissory Note.

2

IN WITNESS WHEREOF, the undersigned has executed and delivered this Promissory Note as of September 1, 2009.

_Eric Sailes_
Signature

_Eric Sailes_
Print or Type Name

Address for Notices:

_639 Amethyst Ave_
_Bethel Heights AR. 72764_